# 04-30192-MAP

I. <u>The Complainant Requests the Following Objections to Issuance of a Notice for a Decision Without a Hearing to be Noted for the Record:</u>

a) *The Record of Investigation (ROI) is Incomplete on its Face.*

By basing her decision solely upon facts set forth in the ROI, the ALJ makes the *de facto* presumption that the record is complete. The Complainant rebuts that presumption. A careful reading of the document presented indicates that documents and records requested of the Agency were not provided and are, therefore, not included in the ROI. *(See, for example, Investigator's Note, P. 16 of 20 of Investigator's Summary; Investigator's Note, P. 18 of 20 of Investigator's Summary and P. 19, paragraph 2; We further note that Mark Sales, <u>Affidavit D</u>, failed to respond to the Investigator's 48 questions and no affidavit was requested from Labor Relations Specialist, Mark Forgue)*

1. Because the Agency has failed and refused to provide records and documents necessary to reach an informed decision in this matter, there is substantial risk that the Complainant's claims will be substantially prejudiced by the Agency's omission.

2. The Complainant stated in his complaint that he was also discriminated against for his prior EEO activity by Labor Relations Specialist, Mark Forgue, however, no affidavit from Mr. Forgue is included in the ROI. Given his position as a Labor Relations Specialist, it reasonable to conclude that Mr. Forgue would be unable to deny prior knowledge of the Complainant's EEO activity.

3. No statement is included from the Complainant's non-attorney representative, familiar with the early stages of each complaint, as this request was sent to the wrong address. Mr. Petrin, having extensive knowledge of the

I. **The Complainant Requests the Following Objections to Issuance of a Notice for a Decision Without a Hearing to be Noted for the Record:**

a) *The Record of Investigation (ROI) is Incomplete on its Face.*

By basing her decision solely upon facts set forth in the ROI, the ALJ makes the *de facto* presumption that the record is complete. The Complainant rebuts that presumption. A careful reading of the document presented indicates that documents and records requested of the Agency were not provided and are, therefore, not included in the ROI. (*See, for example, Investigator's Note, P. 16 of 20 of Investigator's Summary; Investigator 's Note, P. 18 of 20 of Investigator's Summary and P. 19, paragraph 2; We further note that Mark Sales, Affidavit D, failed to respond to the Investigator's 48 questions and no affidavit was requested from Labor Relations Specialist, Mark Forgue)*

1. Because the Agency has failed and refused to provide records and documents necessary to reach an informed decision in this matter, there is substantial risk that the Complainant's claims will be substantially prejudiced by the Agency's omission.

2. The Complainant stated in his complaint that he was also discriminated against for his prior EEO activity by Labor Relations Specialist, Mark Forgue, however, no affidavit from Mr. Forgue is included in the ROI. Given his position as a Labor Relations Specialist, it reasonable to conclude that Mr. Forgue would be unable to deny prior knowledge of the Complainant's EEO activity.

3. No statement is included from the Complainant's non-attorney representative, familiar with the early stages of each complaint, as this request was sent to the wrong address. Mr. Petrin, having extensive knowledge of the

likelihood of shared knowledge among senior management, of the Complainant's prior EEO activity, should have been provided a full and fair opportunity to address these issues.

b) **Because the ROI is Incomplete on its Face, and the Complainant has been Denied Discovery to Correct Deficiencies in the Record, The Complainant is Forced to Accept a Decision made Without a Full and Fair Opportunity to Present All Facts Relevant to his Complaints.**

The ALJ has moved to issue a Decision Without a Hearing within days of the Complainant's receipt of the ROI and notice of his right to begin Discovery. The Complainant, therefore, is forced to rely upon a document to which he has had only minimal input. As the Notice by the ALJ was received less than ten(10) days after the Complainant's notice of right to begin Formal Discovery, including requests for production of documents and answers to interrogatories and scheduling of depositions, he is deprived of each and every tool necessary to present his case, hence, the injustice done him by this Court's sole reliance upon the ROI, is substantial.

The injustice inherent in the Notice to Issue a Decision Without a Hearing is further heightened, first, because of the limited time in which to prepare a response, and second, by opposing counsel having unlimited and unfettered access to the documents and witnesses denied the Complainant by suspension of his right to conduct Discovery.

These factors combine to deny the Complainant access to a "fair and level playing field" from which to prevent his case and serve to deny him equal access to due process. (We note, from documents received from opposing counsel, that as of August 17, she has already received access to Agency documents not made available to the Complainant: **Exhibit 1**

II. **Notwithstanding the Above-Stated Material Objections to these Proceedings, the Complainant Moves to Strike Statement 3 of the ALJ's Statement of Uncontested Material Fact.**

a) Statement 3 reads in relevant part: "The most recent (EEO) filing was an age discrimination charge against Robert Koesner(sic) filed on June 6, 1999."

This statement, although substantially correct, is materially misleading. The issue is whether the prior EEO complaint was in any way contemporaneous with the presently filed claim. Because the ROI in that matter was not issued until 9/10/01, which is not at all apparent from this materially misleading statement of material fact, this fact, as stated, leads to bias and to the erroneous conclusion that the first matter was concluded long before the initiation of the second. (*We note that the ROI for the present matter was issued over 1100 days after the first complaint which forms the basis of these claims.*)

The list of Exhibits from the ROI of Case No. 1B-012-0026-99, **Exhibit 2,** serves to establish that the Agency issued its final decision on June 30, 1999. The Appeal was filed on July 26, 1999. The Appeal was accepted on March 9, 2000. The Agency opposed that decision on March 26, 2000. The EEO's decision and interim order was issued on <u>March 14, 2001.</u> And, as stated, the ROI was not issued until 9/10/01, hence, both matters were, in fact, contemporaneous, and senior management, from MDO Koestner on down, were well aware that the matter was still in progress, both from the posting of the EEO decision and interim order in March, 2001, and from private discussion.

Because this statement is materially misleading, on its face, and goes to a material issue of the claim of "retaliation for prior protected activity," we move that this statement be stricken from the record as it is materially misleading.

Of further concern is the issue that this statement is offered by the ALJ, who will be acting as the "trier of fact" in this matter, rather than opposing counsel, which raises the inference that the "trier of fact" is not fully appraised of a genuinely material fact in this matter, but, nonetheless, is prepared to render a decision. (***Please see stated objections***)

b)   A further objection to this statement is that it is materially misleading in that it fails to note that a number of EEO complaints were contemporaneously filed between June 20, 2001 and November, 2001, and retaliation was charged with each and every filing, which can be determined from the

***ROI-See: Investigator's Summary, Formal Complaint and Counselor's Summary Sections.*** The Statement of Material Fact by the "trier of fact" is therefore further misleading, as it references **only** the date of the <u>original contemporaneous complaint,</u> and not the subsequently consolidated complaints June-November, 2001, each of which are highly relevant in time to each subsequent charge of retaliation.

Again, as this statement was made by the "trier of fact" following a review of the ROI, rather than by opposing counsel, concern is raised that this substantial oversight may introduce bias to any decision rendered by the "trier of fact" at this time.

c) The Complainant has no objection to the remaining "Statements of Material Fact."

## III. The Complainant's Prima Facie Claims:

**RETALIATION:**

To establish a *prima facie* case of retaliation, the Complainant must establish the following factors:

1) Involvement in protected activity.

Between 1993 and 1999 the Complainant filed six EEO complaints. The Complaint filed June 2, 1999 was still under active investigation when the Complainant filed the first of a number of complaints consolidated as 1B-012-0034-01, the first of which was filed June 2, 2001 and the last of which was filed in November of 2001.

2) Establishment of an adverse employment action.

a) On March 15, 2001, the Complainant, with no prior discipline within the past two years, was issued a notice of proposed removal.

b) On July 18, 2001, a seven day suspension, previously held in abeyance, was invoked.

c) On August 20, 2001, he was denied overtime and vacation day pay.

d) On September 29, 2001, he was issued a fourteen day suspension.

Each of these actions constitute "adverse employment actions."

3) The Complainant must show a causal link between the protected activity and the Employment action.

a) Consequent to the Complainant's Appellate activity on 1B-012-0026-99, this claim remained open and active and an EEO decision and interim order was issued 3/14/01, one day before the Complainant was issued a notice of proposed removal. The investigative report in that matter was finally issued on 9/10/01. In his formal complaint filed June 20, 2001, the Complainant charged Retaliation.

The causal link can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the adverse employment action. **_Ray v. Henderson,_** **217 F.3d 1234, 1230, 1244 (9th Cir.) 2000.** Here, the actions were contemporaneous.

b) The second adverse employment action on July 18, 2001, was both contemporaneous with the investigation of the 1999 case and with the first 2001 complaint, filed June 20, 2001. (**_ibid._**)

c) The third adverse employment action August 30, 2001, was both contemporaneous with the ongoing investigation of the 1999 case and with the two prior filed EEO Complaints from June and July 2001. (**_ibid._**)

d) The fourth adverse employment action followed submission of the investigative report in the 1999 EEO complaint (9/10/01) by ten (10) days (9/29/01), and was contemporaneous with the prior actions in June, July and August, 2001. (**_ibid._**)

The Complainant has established a *prima facie* case of Retaliation for each of his four separate claims of Retaliation, therefore, is entitled to prevail upon each claim of retaliation for prior protected activity. He therefore demands all actual, consequential and compensatory

damages be awarded, as claimed, plus all attorney's fees to date.

**Disability Discrimination:**

**To establish a *prima facie* case, the Complainant must demonstrate :**

a)  he is an individual with a disability, for the purposes of the Act;

b)  he is a qualified person with a disability, in that he is qualified for and can perform the essential functions of the position, with or without reasonable accommodation;

c)  he was treated differently than individuals not in his protected group;  and

d)  the circumstances give rise to the inference that the difference in treatment was based on his disability.

Complaint 4, consolidated here, included both the claim of retaliation and the claim of discrimination based upon physical and mental disability. On 9/29/01, the Complainant was issued a 14-day suspension for failure to be regular in attendance. The Complainant, a disabled veteran, had a 10% disability (back) from the military service, and, in August of 2000, suffered a work-related injury (shoulder) which resulted in being placed on light duty with a weight restriction for not lifting more than 10 lb. continuously or 30 lb. intermittently, and no lifting above the shoulders. As a result of increasing back problems as well as the shoulder injury, the Complainant was placed on light duty. The Complainant also suffered a broken ankle in March of 2001, which was not work related.

The Complainant was referred to a psychologist in December 2000, and was first diagnosed with major depression in March of 2001. A full and complete psychiatric evaluation was performed by psychiatrist Diedre Reynolds, M.D., on November 6, 2001, and in her report filed 1/31/02, her Axis I diagnosis is "Major Depression, Recurrent, Severe, Generalized Anxiety Disorder, Panic without Agoraphobia." ***See ROI Exhibits 10-18.***

These conditions affected the Complainant's ability to work, lift, sleep, walk, interact with his family and to function in relationships, therefore had a significant impact upon the quality of multiple life activities (**See Complainant's Affidavits**), hence, the Complainant has established, from the existing record, that he is a "qualified individual with a disability."

The Complainant's physicians requested the reasonable accommodation that he be placed upon light duty because of his physical disabilities. His Psychiatrist requested that he be placed at another facility to remove him from the ongoing and relentless harassment by Management officials at the BMC. The Complainant was eventually moved to the BMC-East, a connected facility. No reason was given by Management for not accommodating the Complainant to another facility. The Complainant, with the accommodation of a light duty assignment, performs the essential functions of his position.

The Complainant has named, in his affidavit, several individuals who were treated differently than him. Because Management has failed to respond to the EEO Investigator's request for comparatives and because the Complainant has been denied discovery, no further information is available concerning individuals who were treated differently. Management, however, had not denied that the named individuals were treated differently, therefore this must be accepted as fact, giving rise to the inference that the Complainant was treated differently because of his disability.

The Complainant has presented a *prima facie case* for discrimination based upon disability. As Management has provided no rebuttal to this claim in the existing record, and has refused to comply with the EEO Investigator's request for all medical documentation provided to them. As Management has failed to fully cooperate with the EEO investigation, this goes to the issue of their credibility before a reasonable finder of fact. It is reasonable, arguendo, to conclude, therefore, that Management had no legitimate reasons for their discriminatory actions and a finding should be entered for the Complainant, if no further Discovery is allowed him.

**Determining Disparate Treatment:**

Based upon the evidence presented to date, which is the sole evidence before this Court, the Complainant has met his initial burden of proving, by a preponderance of the evidence, a *prima facie* case of retaliation for discriminatory purpose, and a *prima facie* case of disability discrimination, therefore, has met his initial burden.

The Agency has articulated no legitimate, non-discriminatory reasons for its actions and has failed to cooperate fully with the EEO investigative process, both in failing, in part, to answer questions presented to management officials to be responded to in their affidavits and in failing or refusing to produce documents requested by the EEO Investigator. Because of the ALJ's decision to issue a decision without a hearing, and because the Complainant has been denied an opportunity for Discovery, the information presently existing must be taken in the light most favorable to the Complainant.

As stated by the ALJ in her Notice to Issue a Decision Without a Hearing, "It is noted that the Complainant's prima facie evidentiary showing is not applied in an absolutely rigid manner; rather, the prima facie prerequisites are to be adopted to the particulars of the individual case at hand. McCorsen v. United States Steel, 621 F.2d 749 (5th Cir. 1980); Laugheson v. Anaconda Co., 510 F.2d 307 (6th Cir 1975); McDonnell Douglas v. Green, 450 U.S. n.13 (1973)"

a)   The ROI is incomplete on its face and the Complainant has stated his objections to this.

b)   The Complainant has been denied the opportunity to conduct Discovery, and the Complainant has stated his objection to being the opportunity to gather the remaining facts and documents necessary to fully present his case, as the final documents and facts are under the sole control of the Agency.

c)   The Agency has failed to fully cooperate with the EEO Investigative process by failing to fully answer questions presented and by failing to produce requested documents.

Given the evidentiary constraints placed upon the Complainant and given the time constraint placed upon the Complaint in meeting the necessity of preparing a response within fifteen (15) days, the Complainant, solely from the existing documentation contained in the ROI, has met his burdens. The Agency must be bound by the same constraints, and it must be noted that the Agency has documented no legitimate, nondiscriminatory reasons for its actions.

Clearly, the parties do not come before the trier of fact upon an equal footing, as the Agency has full and unfettered access to its own records and documents, whereas the Complainant, as a natural person, having no access to the employer's records, absent his right to conduct his own Discovery to elicit from the employer, those documents which he requires to support his claims which are not within his control or possession, must rely solely upon the assembled Record of Investigation (ROI). He has done so, in establishing his *prima facie* claims and this must be acknowledged, as a matter of law, by the trier of fact, because, at this time, the Agency's case, from the ROI, "relies upon mere allegation, speculation and conclusory statements," which this Court has deemed insufficient for granting Summary Judgment (*See: Notice of Intent, P. 4)*.

IV.	**CONCLUSION**

Because the Complainant has established, solely from the ROI, a *prima facie* case of Retaliation ( four counts) and a *prima facie* case of Disability Discrimination (one count) and because the Agency, from the same record, has failed to meet its burden of providing legitimate, nondiscriminatory reasons for its actions, the Complainant should be granted Summary Judgment.

In the alternative, because the ROI is incomplete on its face, and the Agency has failed to produce documentary evidence requested by the EEO investigator, and the Complainant has been denied a full and fair opportunity for Discovery, the Notice of Intent to Issue a Decision Without a Hearing is inappropriate, at this time, as it denies the Complainant full and fair access to due process and should be withdrawn.