```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

DAVID F. POEHLER,                )
        Plaintiff,               )
                                 )
    v.                           )   Case No. 04cv30192-MAP
                                 )
JOHN E. POTTER,                  )
POSTMASTER GENERAL,              )
UNITED STATES POSTAL SERVICE,    )
        Defendant.               )
```

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The plaintiff, David F. Poehler ("Poehler"), brings this action against United States Postmaster General John E. Potter, Jr., alleging disability discrimination and retaliation. The defendant has moved for summary judgment on grounds that Poehler cannot show that he suffered any adverse employment action or that any of the alleged acts were discriminatory. Therefore, the defendant is entitled to summary judgment.

### Local Rule 56.1 Statement of Material Facts[1]

1. At times relevant to the complaint, Poehler was employed by the United States Postal Service. Tab A, Poehler Deposition I,[2] pp. 5-11.

---

[1] For purposes of his motion, the defendant accepts the truth of the facts set forth herein, but reserves his right to challenge those facts if the case proceeds to trial.

[2] Poehler's Deposition took place on two separate days. The November 7, 2005, session is referenced as Poehler I and attached as Tab A. The January 20, 2006, session is referenced as Poehler II and attached as Tab B.

2. In 1996, Poehler was a supervisor at the Chicopee Post Office. He resigned in December of that year following a disagreement with his supervisor. Tab A, pp. 12-13. After a failed business venture, Poehler returned to the Postal Service in 1997 as a clerk in the Springfield Bulk Mail Center ("BMC"). His supervisors at the BMC were Al Hearn and Mark Sales. Tab A, pp. 22-23.

3. Poehler worked as an acting supervisor from 1998 to 1999, when he chose to return to the clerk's job because his workload was too heavy. Tab A, pp. 26-27.

4. In 1998, Poehler applied for the ASP but failed the admissions test. Tab A, p. 33, 39.

5. Poehler worked as a clerk from 1999 to 2001, and a bundle sorter from 2001 to 2004. In 2004, Poehler became an acting supervisor at the BMC in Springfield and transferred to a similar position at the BMC annex in Chicopee in 2005. Tab A, pp. 5-11.

6. On April 11, 2002, Poehler filed EEO Complaint 1B-012-0031-02 alleging disability discrimination and retaliation in connection with the following events: (1) not being made whole following the rescission of a letter of removal; (2) not allowing him to return to work until February 14, 2002, following the rescission of a letter of removal; (3) denying his request for sick leave on January 12, 2002; (4) not timely processing his

worker's compensation claim; and (5) not providing a reasonable accommodation. Tab C, ¶ 21, an Ex. 20 thereto.

    7.   On June 25, 2004, the Postal Service issued its final decision denying Poehler's claim and notifying him of the right to file a lawsuit within 90 days. Tab C, ¶ 23, and Ex. 22 thereto.

    8.   The first allegation of EEO Complaint 1B-012-0031-02 related to the rescission of a February 9, 2002, letter of removal. Poehler complained that although the letter was rescinded, he was not "made whole." However, after filing a union grievance, Poehler was "made whole." Tab B, pp. 43-45. Supervisor Alan Hearn handled the rescission of the letter of removal. Poehler testified that he did not believe that Hearn was discriminating against him on any basis on connection with this issue. Tab B, p. 47.

    9.   The second allegation of EEO Complaint 1B-012-0031-02 claimed that Hearn did not allow Poehler to return to work until February 14, 2002, following the rescission of the letter of removal. Poehler testified that he did not have evidence to support his belief that Hearn's action was discriminatory. Tab B, pp. 49-50.

    10.   The third allegation of the EEO Complaint 1B-012-0031-02 addressed the denial of a request for sick leave on January 12, 2002. Poehler's supervisor at the time, Jay Penna,

was responsible for the denial of sick leave.  According to Poehler, Penna's actions were not motivated by disability discrimination or retaliation but rather due to the fact that he had a letter of removal pending.  Tab B, pp. 48-49.

11.  The fourth allegation of the EEO Complaint 1B-012-0031-02 addressed a delay by Michelle Collin sin processing Poehler's worker's compensation form.  Tab B, pp. 52.53.  Collins explained to Poehler that the delay was due to the fact that she had been on vacation.  Poehler did not believe that explanation and attributed the delay to discrimination.  However, he had no evidence of any discriminatory motive and simply assumed that someone "upstairs" had instructed her to delay processing the form.  Tab B, pp. 53-54.

12.  The final allegation of EEO Complaint 1B-012-0031-02 alleged that the Postal Service failed to provide a reasonable accommodation for Poehler's mental disability.  According to Poehler, his doctor recommended that he be transferred to a different building; instead he was transferred to another part of the same building.  Tab B, pp. 55-56.

## ARGUMENT

**I.   The Summary Judgment Standard**

The role of summary judgment is to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine issue for trial.'"  <u>Mesnick v. General Electric Co.</u>, 950

F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden on the moving party "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The nonmoving party cannot rest on mere allegations, but must set forth specific facts demonstrating a genuine issue for trial.  Hoeppner v. Crotched Mountain Rehabilitation Center, Inc., 31 F. 3d 9 (1st Cir. 1994); see also Perez de la Cruz v. Crowley Towing & Transp. Co., 807 F.2d 1084, 1086 (1st Cir. 1986)(holding that a party may not rely on mere speculation or conjecture as to facts to overcome a motion for summary judgment).

Moreover, not every factual dispute will defeat summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  If the factual dispute is not material and does not make the outcome of trial uncertain, summary judgment is appropriate.  Id.  A dispute of fact is genuine only if there is sufficient evidence to permit a reasonable fact-finder to resolve the issue in the nonmoving party's favor.  NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir. 1994).

**II. Poehler Did Not Suffer An Adverse Employment Action.**

Poehler's complaint cannot survive summary judgment because he cannot show that he suffered an adverse employment action, a prerequisite for a discrimination claim. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002) (citing Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998)). "To be adverse, an action must materially change the conditions of the plaintiff's employment." Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002). Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Hernandez-Torres, 158 F.3d at 47. "'[T]he mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" Marrero, 304 F.3d at 23 (quoting, Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).

Minor changes in working conditions normally do not constitute adverse employment actions. Id. (citations omitted). "Otherwise every trivial personnel action that an irritable . . . employee did not like would form the basis of a discrimination suit." Id. (citing Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). "[A] materially adverse change in the terms and conditions of employment must be more disruptive than a

mere inconvenience or an alteration of job responsibilities." <u>Crady v. Liberty Nat'l Bank and Trust Co.</u>, 993 F.2d 132, 136 (7th Cir. 1993)(cited with approval in <u>Marrero</u>, 204 F.3d at 23).

Poehler's complaints do not approach the level of severity necessary to be considered "adverse employment actions" as that phrase is defined under the law.  The first allegation of EEO Complaint 1B-012-0031-02 related to the rescission of a February 9, 2002, letter of removal.  Although the EEO complaint asserted that Poehler was not "made whole," he acknowledged at his deposition that after he filed a union grievance, he was "made whole."  Tab B, pp. 43-45.  Therefore, by Poehler's own admission, he did not suffer an adverse employment action with respect to the rescinded letter of removal.

The second allegation of EEO Complaint 1B-012-0031-02 claimed that Hearn did not allow Poehler to return to work until February 14, 2002, following the rescission of the letter of removal.  As Poehler explained it at his deposition, "he gave me a date when I could come back to work instead of letting me come back right away."  Tab B, p. 49.  That issue does not amount to a materially adverse change in the terms and conditions of employment.

Similarly, the third and fourth allegations of the EEO Complaint 1B-012-0031-02, which address a denial of sick leave on

January 12, 2002, and a delay in processing worker's compensation forms, fail to rise to the level of adverse employment actions.

Finally, Poehler's claim that the Postal Service failed to provide a reasonable accommodation is similarly trivial. Poehler sought an accommodation that would change the physical location of his work place. The Postal Service effected that change by moving him to a different part of the BMC, which was about a five minute walk from his previous work location. Tab B, pp. 55-56. Indeed, Poehler told his supervisor that he would give it a try for a couple of weeks to see how it worked out. Id. While Poehler may have preferred to move to a different building, 'the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.'" Marrero, 304 F.3d at 23.

### III. Poehler Cannot Establish A Prima Facie Case of Discrimination

Poehler's complaint also fails because he has no evidence that the Postal Service was acting with a discriminatory motive. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). An employer is entitled to summary judgment "if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 843 (1st Cir. 1993), cert. denied 114 S.Ct. 1398 (1994). "[T]he plaintiff must ordinarily do more than impugn the

legitimacy of the employer's asserted justification; he must also adduce evidence 'of the employer's discriminatory animus'." <u>Vega v. Kodak Caribbean Ltd.</u>, 3 F.3d 476, 479 (1st Cir. 1993), <u>quoting</u> <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816 (1st Cir. 1991). Poehler simply can't meet that burden.

With respect to the date of Poehler's return to work following the rescission of his removal, there is no evidence of any discriminatory motive.  Indeed, Poehler testified that he did not believe that Hearn was discriminating against him on any basis on connection with this issue.  Tab B, p. 47.  Similarly, Poehler testified that he did not believe that the denial of sick leave was motivated by discrimination.  Tab B, pp. 48-49. While Poehler has speculated about discriminatory motives for the other actions, he has acknowledged he has no evidence to support his conjecture.  Tab B, pp. 48-50, 53-54, 57.

## **CONCLUSION**

For the reasons stated above, the defendant respectfully requests summary judgment be granted in his favor.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

                                 By:  /s/Karen L. Goodwin
                                      Karen L. Goodwin
                                      Assistant U.S. Attorney
                                      U. S. Attorney's Office
                                      1550 Main Street, Room 310
                                      Springfield, MA  01103
Dated: April 5, 2006              413-785-0235

CERTIFICATION

    I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                    /s/Karen L. Goodwin
                                    Karen L. Goodwin
                                    Assistant U.S. Attorney